IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Shequita L. Malachi, ) | Civil Action No.  2:14-cv-03334-TMC-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1).

The Plaintiff, Shequita L. Malachi, brought this action pursuant to Section 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. § 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") regarding her claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, as amended (the "Act").

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The Plaintiff was 32 years old on the date she applied for supplemental security income. (R. at 19.) She alleged disability beginning on April 1, 2010, due to hypertension, right knee arthritis, bronchitis, obesity, anxiety, and bipolar disorder. (R. at 9, 11.) Plaintiff has an associate's degree and past relevant work as a cashier, assembler, and UPC labeler. (R. at 33, 59-60.

The Plaintiff filed an application for SSI on September 20, 2010. (R. at 9.) Her application was denied initially and on reconsideration. (R. at 9.) After a hearing before an Administrative Law Judge (ALJ) on February 14, 2013, the ALJ issued an unfavorable decision on March 27, 2013. (R. at 9-20.) The Appeals Council denied Plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant has not engaged in substantial gainful activity since September 20, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> (2)     The claimant has the following severe impairments: hypertension, right knee arthritis, bronchitis, obesity, anxiety, and bipolar disorder (20 CFR 416.920(c)).
>
> (3)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 416.967(a) in that she can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for about two hours in a workday; and sit for about six hours in a workday. She must be allowed to alternate sitting and standing at the workstation at intervals of thirty to forty-five minutes. She can occasionally balance, stoop, kneel, crouch, and climb stairs or ramps but never crawl or climb ladders, ropes, or scaffolds. She can only occasionally operate foot pedals or other controls with her right lower extremity. She must avoid concentrated exposure to extremes of temperature and humidity and concentrated exposure to dust, fumes, gases, odors, and other respiratory irritants. She must avoid hazards such as unprotected heights and dangerous machinery. Due to her mental impairments, she is further restricted to unskilled work involving no more than occasional interaction with the public.
>
> (5)     The claimant is capable of performing past relevant work as a UPC labeler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).
>
> (6)     The claimant has not been under a disability, as defined in the Social Security Act, since September 20, 2010, the date the application was filed (20 CFR 416.920(f)).

## **APPLICABLE LAW**

The Act provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. 42 U.S.C. § 1381 *et. seq.*; 20 C.F.R. § 416.110. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has an impairment which prevents past relevant work; and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The plaintiff "bears the burden of production and proof during the first four steps of the inquiry." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If the plaintiff "is able to carry this burden through the fourth step, the burden shifts to the Secretary in the fifth step to show that other work is available in the national economy which the claimant could perform." *Id*. at 1203.

The scope of judicial review by the federal courts in disability cases is "limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales, 402* U.S. 389 (1971). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing*

42 U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find her disabled. More specifically, the Plaintiff alleges that the ALJ erred in failing to comply with Social Security Ruling 82-62 because the ALJ failed to provide "specific findings or analysis regarding the mental demands" of Plaintiff's past relevant work." (Dkt. No. 13 at 23 of 30.) Plaintiff also contends the ALJ erred in failing "to formulate" a residual functional capacity ("RFC") "assessment that encompassed all of the Plaintiff's impairments and limitations" and failed to evaluate Plaintiff's obesity pursuant to Social Security Ruling 02-01p. (Dkt. No. 13 at 26-27 of 30.) Finally, Plaintiff alleges the ALJ erred in "fail[ing] to follow [the] requirements of [Social Security Ruling] 96-8p since the evidence of record fails to support that Plaintiff can perform sustained work activities." (Dkt. No. 13 at 29.)

**A.     Social Security Ruling 82-62**

As noted above, Plaintiff alleges that the ALJ erred in failing to comply with Social Security Ruling 82-62 because the ALJ failed to provide "specific findings or analysis regarding the mental demands" of Plaintiff's past relevant work. (Dkt. No. 13 at 23 of 30.)

4

If a plaintiff is able to perform his or her past relevant work, the plaintiff is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv); *see also Pass v. Chater*, 65 F.3d 1200 (4th Cir. 1995). In the case *sub judice*, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a UPC labeler. (*See* R. at 18.) The ALJ stated,

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually performed. Although the vocational expert testified that the work of a UPC labeler is unskilled work (SVP of 2), generally performed in the national economy at the light level of exertion, he further stated that the claimant described actually performing her work in that position at the sedentary level of exertion. He testified that this job could be performed by a hypothetical individual with the residual functional capacity described above and does not include nonexertional requirements precluded by that residual functional capacity. The claimant can return to her past work as a UPC labeler.

(*Id.*)

Plaintiff contends that in concluding that she could return to her past relevant work as a UPC labeler, the ALJ "failed in her duty under SSR 82-62 to fully question the Plaintiff and develop the record regarding the physical and mental demands of the past work as a UPC labeler, particularly given the inconsistencies in the record regarding this past work." (Dkt. No. 13 at 23 of 30.) Plaintiff points to her "more detailed description" of her job in a Work History Report dated February 21, 2010,[1] "which was closer in time to her application date and fresher in her mind." (Dkt. No. 13 at 24 of 30.) Plaintiff asserts that in the Work History Report, she "describes the job as one in which [she] stood 8 hours daily applying UPC labels to clock boxes and lifting less than 10 pounds," and that the "DOT is also more consistent with this description because the DOT lists this job as Marker II, . . . which is light and unskilled." (*Id.*) Plaintiff contends the Commissioner erred as follows:

> Since there is a factual inconsistency in the Plaintiff's description of the job in her initial Work History Report and during testimony at the hearing, the Commissioner was required by SSR 82-62 to obtain more information and details

---

[1] Although the date on the Work History Report is difficult to discern, it appears the date is actually February 21, 2011. (*See* R. at 161.)

>     about the exertional requirements of the UPC labeler, particularly since the
>     Plaintiff's description of how she performed the job varied.

(*Id.*)

Social Security Ruling 82-62 provides that "[e]valuation under section[] . . . 416.920(e) of the regulations requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work." SSR 82-62, 1982 WL 31386, at *2. That ruling further provides,

>     Past work experience must be considered carefully to assure that the available
>     facts support a conclusion regarding the claimant's ability or inability to perform
>     the functional activities required in this work. . . .
>
>     The claimant is the primary source for vocational documentation, and statements
>     by the claimant regarding past work are generally sufficient for determining the
>     skill level; exertional demands and nonexertional demands of such work. . . .
>
>     The decision as to whether the claimant retains the functional capacity to perform
>     past work which has current relevance has far-reaching implications and must be
>     developed and explained fully in the disability decision. Since this is an important
>     and, in some instances, a controlling issue, every effort must be made to secure
>     evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
>     . . . [F]or a claim involving a mental/emotional impairment, care must be taken to
>     obtain a precise description of the particular job duties which are likely to produce
>     tension and anxiety, e.g., speed, precision, complexity of tasks, independent
>     judgments, working with other people, etc., in order to determine if the claimant's
>     mental impairment is compatible with the performance of such work.

*Id.* at *3.

In the case *sub judice*, there is a conflict between Plaintiff's testimony at the hearing and the Work History Report completed by Plaintiff. (*See* R. at 39, 160.) In her Work History Report, Plaintiff stated that her past work as a UPC labeler required her to stand for eight hours a day. (*See* R. at 160.) In contrast, at the hearing, Plaintiff testified that she performed this job sitting down. (*See* R. at 39.) The ALJ did not note this differing evidence but noted the vocational expert's ("VE") testimony that although the work of a UPC labeler is generally light, Plaintiff

"described actually performing her work in that position at the sedentary level of exertion." (R. at 18.)

It appears that the ALJ credited Plaintiff's testimony over the information Plaintiff provided in her Work History Report. It is true, as Defendant contends, that Plaintiff "is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, at *3. But Plaintiff is the source of *both* of these conflicting pieces of evidence, and the ALJ did not explain why he chose to credit one statement over the other. Additionally, there is no finding–at all–about the mental demands of Plaintiff's past relevant work, in spite of Social Security Ruling 82-62's instruction that when a claim involves a mental or emotional impairment, "care must be taken to **obtain a precise description of the particular job duties which are likely to produce tension and anxiety**, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., **in order to determine if the claimant's mental impairment is compatible with the performance of such work**." SSR 82-62, at *3 (emphasis added). In the case *sub judice*, Plaintiff testified that the clocks to which she applied UPC labels "came down the conveyor belts and [she] had to place the UPC sticker" on the clock. (R. at 39.) The ALJ found that Plaintiff's anxiety and bipolar disorder constituted severe impairments, but he made no finding of the mental demands of Plaintiff's past relevant work. In light the foregoing, the undersigned cannot conclude that the ALJ's determination that Plaintiff is capable of performing her past relevant work as a UPC labeler is supported by substantial evidence.

That error does not end the inquiry, however, because the ALJ in this case made alternative findings. *See Martinez v. Astrue*, 316 F. App'x 819, 824 (10th Cir. 2009) (since the ALJ's "step-five finding was proper," the ALJ's error at step four was harmless); *see also Queen v. Astrue*, Civ. A. No. TMD 10-3364, 2012 WL 1016822, at *3 (D. Md. Mar. 23, 2012) ("[I]f the Court upholds the ALJ's finding at step five of the sequential evaluation, any error at step four is

7

harmless." (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n. 8 (4th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004))). The ALJ stated, *inter alia*,

> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, I make the following alternative findings for step five of the sequential evaluation process.
>
> The claimant was born on September 12, 1978, and was 32 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963). The claimant has more than a high school education and is able to communicate in English (20 CFR 416.964). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). However, I note that the severity of the claimant's mental impairments would preclude the transfer of work skills acquired in her past work to other work.
>
> In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform (20 CFR 416.969 and 416.969(a)).
>
> . . .
>
> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as assembler (DOT number 739.684-094), . . . addresser (DOT number 209.587-010), . . . and machine tender (DOT number 731.684-014). . . .

(R. at 19.) Accordingly, because the ALJ made alternative findings, the undersigned proceeds to an analysis of the errors Plaintiff asserts the ALJ committed at Step Five.[2]

---

[2]As detailed below, because the undersigned concludes the ALJ erred at Step Five, the error at Step Four is not harmless. *See Reynolds v. Astrue*, 252 F. App'x 161, 165 (9th Cir. 2007) ("[W]hile we agree with [the plaintiff] that the ALJ committed legal error in the step-four analysis . . . that error is harmless given the ALJ's RFC assessment and

(continued...)

8

**B.     Obesity**

Plaintiff contends the ALJ erred in failing to evaluate Plaintiff's obesity pursuant to Social Security Ruling 02-01p. (Dkt. No. 13 at 27 of 30.) Plaintiff states, "The Commissioner listed obesity as one of the Plaintiff's many severe impairments; however, that is the only mention of obesity in the Commissioner's decision." (Dkt. No. 13 at 27.)

Having carefully examined the record and the parties' arguments, the undersigned recommends remanding this case because the ALJ failed to properly evaluate Plaintiff's obesity and comply with Social Security Ruling 02-01p. *See* SSR 02-01p, 2002 WL 34686281. While the Social Security Administration removed obesity from the Listing of Impairments in 20 C.F.R., subpart P, appendix 1 in October of 1999, obesity is still considered "to be a medically determinable impairment" that adjudicators must consider when evaluating disability. *See* SSR 02-01p, 2002 WL 34686281, at *1. Social Security Ruling 02-01p provides, *inter alia*,

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, **and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems**. . . . Obesity **may also cause or contribute to mental impairments** such as depression. The **effects of obesity may be subtle**, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea.

*Id*. at *3 (emphasis added). The Ruling further provides that the Commissioner "will find that obesity is a 'severe' impairment when, **alone or in combination** with another medically determinable physical or mental impairment(s), it **significantly limits** an individual's physical or mental ability to do basic work activities. *Id*. at *4 (emphasis added). Additionally, the Ruling states,

> [O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

---

²(...continued)
step-five determination, both of which are supported by substantial evidence in the record." (citations omitted).)

> . . .
>
> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. **We will evaluate each case based on the information in the case record**.

*Id.* at *5-6 (emphasis added).

Social Security Ruling 02-01p recognizes that "[o]besity can cause . . . limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling," and that the "effects of obesity may not be obvious." *Id.* at *6. The Ruling states that "[a]n assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," as "[i]ndividuals with obesity may have problems with the ability to sustain a function over time." *Id.* Furthermore, "[a]s with any other impairment," the Commissioner "will **explain** how [she] reached [her] conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7 (emphasis added).

In the case *sub judice*, the ALJ determined that Plaintiff's obesity was a severe impairment and stated, *inter alia*,

> Clinical findings and diagnostic studies demonstrate sufficient functional limitations resulting to the claimant to constitute "severe" impairments, as that term is defined in the regulations.

(R. at 11.) The ALJ did mention obesity at Step Three, noting that "[n]o listing is directly applicable to obesity." (R. at 11.) However, the undersigned is unable to locate any other discussion of the Plaintiff's obesity.

In *Diaz v. Commissioner*, 577 F.3d 500 (3d Cir. 2009), the Third Circuit addressed the plaintiff's argument that the ALJ's ruling was not supported by substantial evidence because "no consideration was given to [the plaintiff's] severe obesity." *Diaz*, 577 F.3d at 503. The ALJ in *Diaz* acknowledged the plaintiff's obesity was a severe impairment at Step Two but failed to consider its impact at subsequent steps in the evaluation process. *Id.* at 503-05. The Third Circuit

rejected the government's argument that, pursuant to *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), the ALJ's adoption of certain conclusions constituted "a satisfactory, if indirect, consideration" of obesity. *Diaz*, 577 F.3d at 504. The court distinguished *Rutherford*, noting that "[s]ignificantly," the plaintiff in *Rutherford* "did not assert obesity as an impairment." *Diaz*, 577 F.3d at 504. The Third Circuit continued,

> Here, by contrast, Diaz asserted—and the ALJ specifically determined—that Diaz's obesity constituted a severe impairment. Further, we cannot conclude, as we did in *Rutherford*, that Diaz's obesity had no impact, alone or in combination with her other impairments, on her workplace performance. To the contrary, Diaz's morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis. SSR 02–1p also underscores the interplay between obesity and joint dysfunction, mobility, and musculoskeletal function. Although in *Rutherford* we expressed some willingness to view the reference to the reports of the claimant's examining physicians as constituting adequate, implicit treatment of the issue by the ALJ, we decline to do so here, where Diaz's obesity was urged, and acknowledged by the ALJ, as a severe impairment that was required to be considered alone and in combination with her other impairments at step three.
>
> Accordingly, the District Court's critical determination—that the ALJ's citation of reports by doctors who were aware of Diaz's obesity sufficed—was error. Were there any discussion of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function. . . . Surely the ALJ, having recognized obesity as an impairment, should determine in the first instance whether, and to what extent, Diaz's obesity, in combination with her asthma, diabetes, arthritis, back pain, and hypertension, impacted her workplace performance.

*Diaz*, 577 F.3d at 504-05 (citations omitted).

As in *Diaz*, the ALJ in the case *sub judice* found that Plaintiff's obesity was a severe impairment but did not discuss how that impairment affected Plaintiff's physical or mental ability to do basic work activities. Simply put, there is no explanation whatsoever. It does not appear to the undersigned that the ALJ complied with Social Security Ruling 02-01p. The record contains at least some–if not significant–evidence that Plaintiff's obesity greatly affected, and was directly linked, to many of her other impairments. For example, on October 4, 2010,

11

Plaintiff's weight was 310 pounds and her blood pressure was 182/114. (R. at 14, 222.) On March 28, 2011, Plaintiff weighed 335 pounds and had a blood pressure of 202/129. (R. at 15.) Dr. Karanjeet's notes from June 14, 2011 indicate that Plaintiff's blood pressure was 150/100 and weight was 347. (R. at 377.) Dr. Karanjeet's notes from that day further indicate that she spoke to Plaintiff "about obesity and decreasing [Plaintiff's] weight which can be achieved through diet restriction, exercise, probably losing about 10 to 20% would help her in controlling the blood pressure." (R. at 378.) Dr. Karanjeet also noted that "[l]osing weight would probably help [Plaintiff's] arthritis" and that Plaintiff's difficulties sleeping would likely improve upon losing weight. (R. at 378.) Dr. Karanjeet's notes also indicate that Plaintiff reported believing her eating habits were "because of the bipolar disorder," to which Dr. Karanjeet "agree[d] partly" and encouraged Plaintiff's fiancee to go grocery shopping with her "because she needs help to get better." (R. at 378.) In February of 2012, Plaintiff's weight was 342 and blood pressure was 140/80. (R. at 527.) The "assessment/plan" section of Dr. Karanjeet's notes from February of 2012 indicate that Plaintiff is "[i]nsulin resistant with persistent weight gain. The patient is not able to lose weight." (R. at 527.) Furthermore, as recognized by Social Security Ruling 02-01p, the effects of obesity "may not be obvious" and may include fatigue. *See* SSR 02-01p, at \*6. Here, the Plaintiff testified that she "sleeps only about two hours a day and is constantly tired." (R. at 14.) However, there is no analysis in the ALJ's decision about the Plaintiff's ability to sustain work function over time. *See id*. at \*6; *see also* SSR 96-8p, 1996 WL 374184, at \*2.

The undersigned cannot reconcile the ALJ's conclusion that Plaintiff's obesity was a severe impairment with the ALJ's failure to explain–at all–how obesity affected Plaintiff's physical or mental ability to do basic work activities. *See Diaz*, 577 F.3d at 504-05; *see also* SSR 02-01p; *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270-72 (D. Md. 2003) (remanding where, *inter alia*, the ALJ found that the plaintiff's obesity was a severe impairment at Step Two but "offered no explanation as to why he did not consider plaintiff's obesity at steps three and four of

the evaluation process"). Because the ALJ failed to properly evaluate Plaintiff's obesity, the undersigned recommends that this case be remanded for further proceedings.

**C.**     **Remaining Allegations of Error**

Because the Court finds the ALJ's analyses of Plaintiff's obesity and past relevant work to be sufficient bases to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's assertion that the ALJ erred in failing to formulate a residual functional capacity assessment that "encompassed all of the Plaintiff's impairments and limitations." (Dkt. No. 13 at 26-27 of 30.)

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 25, 2016
Charleston, South Carolina

13